**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JOSHUA CHANEY,
ISAIAH CHANEY,
ROBERT PELFREY III,
MICHAEL GROVER,
COLIN MARCUM, and
BRANDON MARTIN,

                Plaintiffs,

v.                                  CIVIL ACTION NO. 3:26-0210

DIESEL DRILLING CORP.,
a West Virginia Corporation,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Remand by Plaintiffs Joshua Chaney, Isaiah Chaney, Robert Pelfrey III, Michael Grover, Colin Marcum, and Brandon Martin. ECF No. 6. Also pending is Defendant Diesel Drilling Corporation's Motion to Dismiss. ECF No. 9.[1] For the following reasons, the Court **GRANTS** Plaintiffs' Motion to Remand and declines to resolve Defendant's Motion to Dismiss.

**I.
BACKGROUND**

On February 19, 2026, Plaintiffs filed their Complaint in the Circuit Court of Putnam County, West Virginia, alleging various claims for additional pay and compensation. ECF No. 1-1. Defendant timely removed the Complaint to this Court on March 19, 2026, asserting that all

---

[1]Defendant filed its Motion and Memorandum as a single document. Pursuant to Local Rule of Civil Procedure 7.1, a motion and memorandum must be filed separately.

Plaintiffs' claims arise under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, thereby presenting federal question jurisdiction. In their motion, Plaintiffs argue removal was improper because their claims arise under state law and are not covered by any collective bargaining agreement. On the other hand, Defendant maintains Plaintiffs' claims are preempted and must be dismissed.

In their Complaint, Plaintiffs allege they all are employed by Defendant as non-exempt employees, but Defendant failed to pay them in accordance with West Virginia law. Specifically, in Count I, Plaintiff Joshua Chaney asserts he was required to complete certain training, but Defendant did not pay him for the time he spent attending an online lecture, in violation of § 42-8-11.7.1 of the West Virginia Code of State Rules.[2] In Count II, all Plaintiffs allege that they were not compensated for travel, in violation of § 42-8-11.8.[3] In Count III, all Plaintiffs allege that

---

[2]Section 42-8-11.7.1 provides:

> If an employer requires an employee to attend or to present material at a training session, meeting, or lecture, the employer shall include as compensable time the time the employee spends preparing for and attending the training session, meeting, or lecture, including travel time as set forth in subsections 11.8 and 11.9 of this section.

W. Va. CSR § 42-8-11.7.1.

[3]Section 42-8-11.8 provides:

> Travel time when no overnight stay is required by the employer. If an employer requires an employee to travel when no overnight stay is required, the employer shall include the following as compensable time:
>
> 11.8.1. The time the employee spends traveling away from and returning to the employee's assigned work location; and
> 11.8.2. The time the employee spends traveling to perform his or her job assignments and responsibilities.

Defendant also failed to compensate them for overnight work trips, in violation of § 42-8-11.9.[4]

In Count VII, Plaintiffs claim that Defendant's failure to pay them for their time constitutes "Reckless Indifference for Financial Gain."

Plaintiffs also make three contract claims. In Count IV, Plaintiff Robert Pelfrey III claims Defendant agreed to pay him per diem for certain work, but it failed to do so. In Count V, Plaintiff Colin Marcum alleges that Defendant agreed to pay certain medical bills if Plaintiff did not file a Workers' Compensation claim, but Defendant failed to pay. Similarly, Plaintiff Brandon Martin

---

> 11.8.2. The time the employee spends traveling to perform his or her job assignments and responsibilities.

W. Va. CSR § 42-8-11.8.

[4]This section states:

> Travel time when an overnight stay is required. If an employer requires an employee to travel when an overnight stay away from the employee's home is authorized, the employer shall include the following as compensable time:

> 11.9.1. The time the employee spends traveling during his or her normal work hours on any day of the week, including days when the employee is not normally scheduled to work, such as Saturday or Sunday; and

> 11.9.2. The time the employee spends traveling either before or after his or her normal work hours on any day of the week, including days when the employee is not normally scheduled to work, such as Saturday or Sunday, except for the time that the employee spends as a passenger in an automobile or taxi, or on an airplane, train, boat, or bus. If the employee is performing work duties required by the employer while he or she is a passenger in an automobile or taxi, or on an airplane, train, boat, or bus, the employer shall treat this time as compensable time.

W. Va. CSR § 42-8-11.9.

asserts in Count VI that Defendant agreed to pay bills not covered by his personal medical insurance if he did not file for Workers' Compensation, but Defendant did not pay those bills.

In their briefing, the parties agree that only some Plaintiffs are covered by collective bargaining agreements (CBAs). According to Plaintiffs, Joshua Chaney, Michael Grover, and Colin Marcum operate under two CBAs, the Heavy and Highway Agreement and what is referred to as the Building and Construction Trades Agreement, while Isaiah Chaney and Robert Pelfrey III are not covered by any CBAs. Defendant argues that the claims of the union employees covered by the CBAs are preempted under § 301, and the claims of the nonunion Plaintiffs cannot survive because they have no contractual right to compensation under the CBAs and have otherwise failed to state a claim.

## II.
## DISCUSSION

This Court cannot rule on the merits of Defendant's Motion to Dismiss until it determines whether it has jurisdiction. *See United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012) ("Subject matter jurisdiction defines a court's power to adjudicate cases or controversies — its adjudicatory authority — and without it, a court can only decide that it does not have jurisdiction."). Pursuant to 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). In this case, Defendant asserts federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.[5] As the removing party, Defendant bears the burden of establishing jurisdiction, and this Court must "'strictly construe' jurisdictional limits because of the 'significant federalism concerns' that attend

---

[5]This section provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction does not exist and is not at issue.

the removal of cases from state court to federal court." *Burrell v. Bayer Corp.*, 918 F.3d 372, 380–81 (4th Cir. 2019) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey*, 29 F.3d at 151.

To determine whether a case "arises under" federal law for the purposes of establishing federal question jurisdiction, the Court adheres to the well-pleaded complaint rule, in which jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). It is not enough that there may be a defense grounded in federal law, including a defense of preemption, to establish jurisdiction. *Id*. at 392–93. However, if "an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id*. at 393 (citation omitted). This situation often arises in cases involving collective bargaining agreements (CBAs) under § 301 of the LMRA. Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has held that § 301 not only "governs claims founded directly on rights created by collective-bargaining agreements," but also grants federal courts jurisdiction over "claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394 (internal quotation marks and citations omitted); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988) (stating "if the resolution of the state-law claim depends upon the meaning of the collective-bargaining agreement, the application

of state law . . . is pre-empted"). Thus, suits falling under § 301 are governed by federal law. *See Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962) ("The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute."). In other words, all state law actions that depend upon an analysis of a CBA are preempted.

Here, Defendant argues the union Plaintiffs' claims are covered and controlled by the CBAs and, therefore, are completely preempted under § 301 of the LMRA. However, preemption does not apply to "every dispute . . . tangentially involving a provision of a collective bargaining agreement[.]" *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). There is no preemption for state-law claims that are "sufficiently independent" of a CBA. *Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 369 (1990). Additionally, when the parties do not dispute the meaning of the contract terms, "the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) (citation omitted).

As previously stated, the first three counts in Plaintiffs' Complaint are for violations of West Virginia's Code of States Rules. All three counts allege that Defendant failed to compensate them as lawfully required under the Rules. As emphasized by the Fourth Circuit in *McCormick v. AT&T Techs., Inc.*, 934 F.2d 531 (4th Cir. 1991), "mere parallelism between the facts and issues to be addressed under a state law claim and those to be addressed under § 301 does not render the state-law analysis dependent on the collective bargaining agreement." 934 F.2d at 535. When "the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id*.

Applying this standard to the allegations made in this case, the Court finds that determining whether Defendant violated the State Rules requiring compensation for specific work activities (i.e. attending a lecture and travel time) does not depend on any interpretation of the CBAs. Instead, the only thing to resolve is whether a plaintiff performed the activity specified by the Rules on behalf of Defendant and, if so, whether the plaintiff was compensated as required by the Rules. It is completely unnecessary to refer to either of the CBAs to determine compliance with the State law. Indeed, even if the CBAs provided that the activities covered by the Rule are not compensable, the Supreme Court has made it clear that "§ 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." *Allis–Chalmers*, 471 U.S. at 212. In fact, both CBAs disavow that they apply if they conflict with state law, by providing:

> In the event any provision of this Agreement is held to be in conflict with any state or federal law applicable hereto, the parties shall not be bound by the provisions affected by such law, but all other provisions of this Agreement shall continue in full force and effect.

*Heavy and Highway Agreement*, Art. IX, § 4, ECF No. 7; *Building and Construction Trades Agreement*, Art. XVII, ECF No. 7. To put it simply, Plaintiffs' claims that Defendant's conduct violates the West Virginia Rules is neither dependent upon nor requires an analysis of either CBA.

In support of its position that these claims are preempted, Defendant cites *Barton v. House of Raeford Farms, Inc.*, 745 F.3d 95 (4th Cir. 2014). However, the Court finds *Barton* is distinguishable. In *Barton*, the plaintiff-employees sued, in part, under South Carolina's Wage Act, which defined "'wages' as 'all amounts . . . which are due to an employee *under any employer policy or employment contract*.'" 745 F.3d at 105-106 (quoting S.C. Code Ann. § 41-10-10(2) (emphasis added in *Barton*)). Thus, the Fourth Circuit held that "[a]ny wages owed to the plaintiffs . . . were necessarily those agreed to in the CBA negotiated between the Union and [the employer]." *Id.* at 106. As such, the Fourth Circuit found the plaintiffs' claims were preempted because "any

-7-

entitlement the plaintiffs [had] . . . to unpaid wages under the S.C. Wages Act must stem from the CBA that governed the terms and conditions of their employment, including their wages." *Id*. at 109. To the contrary, in this case, Plaintiffs assert the West Virginia Rules themselves, irrespective of the CBAs, expressly provide that Defendant must compensate them for attending required lectures and for certain required travel time. Thus, there is no need to interpret either of the CBAs to establish whether Defendant's alleged failure to pay Plaintiffs violated the protections they are afforded under West Virginia law. *See e.g.*, *Williams v. C&D Techs., Inc.*, 808 F. Supp.2d 1096, 1098, 1101-02 (E.D. Wis. 2011) (holding whether the employer "violated state law by failing to pay plaintiffs for their short breaks," as required by Wisconsin wage and hour law, "is entirely a question of state law" that does not involve "applying state-law principles to the terms of a [CBA] or determining whether [the defendant] breached the agreement"). Accordingly, the Court finds that Counts I, II, and III of Plaintiffs' Complaint are not preempted by § 301 of the LMRA.

The Court next turns to Count IV, in which Plaintiff Pelfrey alleges he entered into an agreement with Defendant "to be paid per diem for all work done out of town while in the employ of Defendant." *Compl.* ¶43. According to Plaintiffs, Mr. Pelfrey is not a member of either union and not subject to either CBA. Therefore, the Court finds whatever agreement Mr. Pelfrey had with Defendant is not preempted § 301 as he is not a union employee.

In Counts V and VI, Plaintiffs Marcum and Martin claim that Defendant breached an agreement with them to pay certain medical bills in exchange for them not filing Workers' Compensation claims. Unlike Plaintiff Pelfrey, both Marcum and Martin are union employees covered by the CBAs. However, Defendant does not make any specific argument in its Response why these claims confer federal jurisdiction. In its Response, Defendant argues that "Plaintiffs' claims cannot be resolved without interpreting CBAs governing wages, hours, and compensable

time." *Def.'s Resp.* at 2, ECF No. 8. However, these claims do not involve "wages, hours, or compensable time." Instead, Marcum and Martin allege Defendant agreed to reimburse them for unpaid medical bills if they agreed not to file claims for Workers' Compensation. Setting aside the viability of such agreements,[6] Defendant does not differentiate these claims from Plaintiffs' other claims seeking wages under the State Rules. Likewise, Defendant makes no effort in its Response to show why Marcum and Martin's claims are governed by, or substantially dependent upon an analysis of, the CBAs.[7] As such, the Court finds Defendant, as the removing party, has not met its burden of establishing federal jurisdiction to justify the propriety of removal.

Plaintiffs' last claim is for "Reckless Indifference for Financial Gain." This claim appears to be a catch-all for Plaintiffs' first three claims, as Plaintiffs assert Defendant said it would not compensate them for that time so it could remain profitable. Therefore, with any recovery for this claim resting on a violation of the State Rules, this claim, like Counts I, II, and III, is independent of the CBAs and does not establish federal jurisdiction.

In their motion, Plaintiffs also request attorney fees pursuant to 28 U.S.C. § 1447(c). This provision provides, in part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C.

---

[6] West Virginia Code § 23-2-7 provides that "[n]o employer or employee shall exempt himself or herself from the burden or waive the benefits of [the Workers' Compensation chapter] by any contract, agreement, rule, or regulation, and any such contract, agreement, rule, or regulation shall be pro tanto void." W. Va. Code § 23-2-7; *compare with* W. Va. Code § 23-5-7 (permitting settlement of Workers' Compensation claims under certain conditions); *Friend v. Remac Am., Inc.*, Civ. Act. No. 3:12-17, 2013 WL 590502 (N.D. W. Va. Feb. 14, 2013) (discussing the interrelationship between West Virginia Code § 23-2-7 and § 23-5-7).

[7] Indeed, although the Court was provided only a very few pages of either CBA, it seems near certain that the CBAs would not include a provision in which the Union and Defendant agreed to discourage or preclude employees from filing for Workers' Compensation for work-related injuries.

§ 1447(c). In determining whether attorney fees should be awarded, the Supreme Court held in *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." 546 U.S. at 141 (citations omitted); *see also Balck v. Mantei & Assoc., Ltd.*, 145 F4th 528, 534 (4th Cir. 2025) (quoting *Martin* and stating "the removing party has some leeway to be wrong"). In this case, although the Court disagrees with Defendant, it cannot say it lacked an objectively reasonable basis in removing the action. Therefore, the Court denies Plaintiffs' request for attorney fees.

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court finds that Defendant has failed to meet its burden to show this Court has jurisdiction over Plaintiffs' claims, **GRANTS** Plaintiffs' Motion to Remand, **DENIES** Plaintiffs' request for attorney fees, and **REMANDS** this action back to the Circuit Court of Putnam County. ECF No. 6. Having resolved the Motion to Remand in Plaintiffs' favor, the Court declines to rule on Defendant's Motion to Dismiss. ECF No. 9.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        May 14, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE